*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 12, 2026
10:41 AM

Plaintiff-Appellee,

v

No. 374053
Oakland Circuit Court
LC No. 2021-278453-FC

MICHAEL JEROME DAVIS,

Defendant-Appellant.

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree premeditated murder, MCL 750.316, assault with intent to commit murder (AWIM), MCL 750.83, and two counts of possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without the possibility of parole for first-degree murder, 30 to 720 months for AWIM, and two years for each felony-firearm conviction. On appeal, he asserts that the trial court erred in denying his pretrial motion to suppress statements he made during a police interview, and he challenges the sufficiency of the evidence to support his conviction of first-degree murder. We affirm.

## I. BACKGROUND

This case arises out of a shooting inside defendant's Pontiac home on the evening of April 14, 2021, that resulted in the death of Franklin Delano Fleming, Jr., and the wounding of Denise Johnson.

Johnson, who had known defendant for several years and was staying with him at the time of the shooting, testified[1] that she was watching television in an upstairs bedroom when she went

---

[1] Johnson died of unrelated causes before trial, so her preliminary-examination testimony was read to the jury.

downstairs and encountered defendant. He showed her a piece of paper with a "white powdery substance" on it, which he claimed he obtained from an old man, but defendant did not know what the substance was and said he was going to throw it away.

After Johnson retreated upstairs, defendant approached her with a "distorted look on his face" and pointed a handgun at her. He ordered her to get into a bathtub in a nearby bathroom and to remain there until Fleming either arrived at or departed from the house. Johnson moved to the bathroom but refused to get into the bathtub because she believed defendant intended to kill her; during the ensuing argument, defendant accused Johnson and Fleming of conspiring to rob him. Johnson eventually knelt next to the toilet and covered her head with her hands. Defendant fired once in the direction of Johnson's head from approximately five feet away, striking her hand and causing a graze wound to the back of her head. He then went downstairs and returned more than once while Johnson feigned death; after his final departure, she climbed onto the roof, jumped to the ground, and ran to a passing police cruiser.

Deputy Charles Piotrowski of the Oakland County Sheriff's Office (OCSO) was patrolling the neighborhood near the home when he encountered Johnson, who identified defendant by name as her shooter. The deputy observed defendant standing in the doorway of the home, after which defendant retreated inside. When a SWAT team breached the home hours later, officers found Fleming dead in the front entryway, but defendant was not there. An investigator from the medical examiner's office testified that Fleming appeared ready to leave the house at the time of his death based on his cold-weather clothing and a cigarette and lighter found in his hands. His cause of death was determined to be a single gunshot wound to the back of the head.

Officers located defendant in Ohio 10 days later, where he was arrested and interviewed by Detective Michael Miller and Lieutenant Eric Hix of the OCSO. After being advised of and acknowledging his *Miranda*[2] rights, defendant told the officers that he sold drugs and believed that Johnson and Fleming were plotting to rob him of drugs and money. He did not deny shooting the victims, stating that "the scene speaks for itself" and "they was [sic] gonna kill me." He acknowledged fleeing the home after the shooting and claimed that he disposed of the gun somewhere it would not "wind up in somebody else's hands."

After the presentation of evidence, the jury convicted defendant of the charged offenses, and the trial court sentenced him as described above. This appeal followed.

## II. DISCUSSION

### A. MOTION TO SUPPRESS

Defendant first asserts that he unequivocally invoked his Fifth Amendment right against self-incrimination during the custodial interview and that the trial court erred by denying his pretrial motion to suppress his subsequent statements.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation but review for clear error the underlying findings of fact. *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. (citation omitted). We review de novo "[a]ny ancillary questions of law relevant to the motion to suppress." *Id*.

"The right against self-incrimination is guaranteed by both the United States Constitution and the Michigan Constitution." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005), citing US Const, Am V; Const 1963, art 1, § 17. Thus, "[a] criminal defendant enjoys safeguards against involuntary self-incrimination during custodial interrogations." *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014). Among those safeguards "is the right to remain silent during custodial interrogation and the right to cut off police questioning." *Id*.

A suspect may assert the right to remain silent at any time during a custodial interview, but "the assertion must be unequivocal." *Id*. If a defendant opts to speak to police after receiving *Miranda* warnings, he must thereafter "affirmatively reassert the right to remain silent" to invoke that right. *People v Davis*, 191 Mich App 29, 35-36; 477 NW2d 438 (1991). When an individual unequivocally invokes the right to remain silent, "the police must scrupulously honor" that request. *Henry*, 305 Mich App at 145 (quotation marks and citation omitted). "The police fail to scrupulously honor a defendant's invocation of the Fifth Amendment right by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Id*. (quotation marks and citation omitted). But police are not required to end an interrogation when a suspect invokes the right to remain silent ambiguously or equivocally. *Berghuis v Thompkins*, 560 US 370, 381; 130 S Ct 2250; 176 L Ed 2d 1098 (2010).

A suspect's assertion of his or her Fifth Amendment rights is unequivocal if the assertion is unambiguous. *Henry*, 305 Mich App at 147 (holding that the defendant unequivocally asserted his right to remain silent when he unambiguously stated to police that he did not wish to waive his rights or make a statement). Whether a suspect unequivocally invoked the right to remain silent is an objective inquiry and "requires, at a minimum, some statement that can reasonably be construed" as an invocation of that right. *Davis v United States*, 512 US 452, 458-459; 114 S Ct 2350; 129 L Ed 2d 362 (1994) (citation omitted).[3] But if a suspect makes a reference to the right to remain silent "that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking" the right to remain silent, "our precedents do not require the cessation of questioning." *Id*. at 459.

In *Davis*, the Supreme Court held that the defendant's statement, "Maybe I should talk to a lawyer," was equivocal because "a reasonable officer in light of the circumstances would have understood only that the [defendant] *might* be invoking the right to counsel." *Id*. at 459, 462. Similarly, this Court has held that a defendant's custodial statements that "[m]aybe I should talk

---

[3] Though *Davis* concerned the right to counsel during custodial interrogations, *Berghuis* extended its rule to the right to remain silent. *Berghuis*, 560 US at 381-382.

to an attorney" and "I might want to talk to an attorney" were equivocal. *Tierney*, 266 Mich App at 711.

In this case, the police advised defendant of his *Miranda* rights, and he acknowledged that he understood those rights. When asked about the events of April 14, 2021, he alleged that Johnson and Fleming were plotting to rob him of drugs and money. He asserted that Johnson had stolen from him before and had been leaving his front door unlocked while staying with him, and when he heard someone in his downstairs living room on the date at issue, he "put the pieces together" that Johnson and Fleming were plotting against him. Later in the interview, he stated that he realized the victims were conspiring against him the day before the shooting.

The officers asked defendant about the order of events on April 14, and defendant stated that he attacked Johnson first. Detective Miller informed defendant that Johnson had survived the shooting and, after a pause, defendant said: "I think this might be a good place to stop, though." The officers confirmed that was defendant's right but indicated that they wanted his side of the story. Defendant stated that the "why" would not change the outcome, noting that the scene spoke for itself. He thought Johnson and Fleming would kill him for his drugs and money because they knew defendant would go after their cohorts in retaliation for the robbery. Before the interview concluded, he asserted that a jury of his peers would not find him guilty and he felt no sympathy for the victims.

Before trial, defendant moved to suppress the entirety of his statements during the interview. He contended that he unequivocally invoked his right to remain silent when he said, "I think this might be a good place to stop, though," and the officers failed to scrupulously honor that request because they continued to question him. During a subsequent evidentiary hearing, Detective Miller and Lieutenant Hix both testified that they did not understand defendant's statement to be an unequivocal assertion of his right to remain silent, noting his use of the words "think" and "might." At the hearing's conclusion, the trial court found that defendant's statement was "grammatically equivocal and manifestly ambiguous" and therefore denied his motion to suppress. Defendant now challenges that finding.

We agree with the trial court that defendant did not unequivocally invoke his right to remain silent when he stated, "I think this might be a good place to stop, though." Defendant's use of the words "think" and "might" rendered his statement at least as tentative as the defendants' statements in *Davis* and *Tierney*. Based on his phrasing, a reasonable officer could have understood that defendant was merely musing about whether he should invoke his right to remain silent, not asserting a decision to end the interview. That falls short of the unequivocal, unambiguous invocation our jurisprudence requires. Accordingly, the trial court did not err by concluding that defendant failed to unequivocally invoke his right to remain silent, nor did the court err by denying the motion to suppress on that basis.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next asserts that the prosecution failed to present sufficient evidence to support his first-degree murder conviction.

-4-

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "[T]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). The prosecution is not required to disprove every reasonable theory of a defendant's innocence; it "need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Kenny*, 332 Mich App at 403.

Due process requires the prosecution to prove every element of an offense beyond a reasonable doubt. *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021). "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (citation omitted).[4] A killing is deliberate when it is committed without adequate provocation "or while undisturbed by hot blood." *People v Smith*, 351 Mich App 1, 23; 34 NW3d 593 (2024) (quotation marks and citation omitted). "A murder is premeditated when the defendant had the opportunity to consider his actions for some length of time before completing the murder." *Id*. Both premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (citation omitted). That period need not be long; "a brief moment of thought or a matter of seconds" may suffice. *Oros*, 502 Mich at 242-243 (cleaned up).

Although premeditation and deliberation are distinct elements, they may be established by the same facts and are often "incapable of direct proof absent an admission or confession by the defendant." *Id*. at 240-241. They may be inferred from the facts and circumstances if those inferences are supported by the record and not based on mere speculation. *Bass*, 317 Mich App at 266. Given the inherent difficulty in proving a defendant's state of mind, only minimal circumstantial evidence is required to support an inference of intent. *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011).

Premeditation may be shown through "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Smith*, 351 Mich App at 24 (citation omitted). The type of weapon used and location of the victim's wounds may also be indicative of premeditation. *People v Coddington*, 188 Mich App 584, 600; 470 NW2d 478 (1991).

In this case, the prosecution presented sufficient evidence of premeditation and deliberation to support the jury's verdict. Johnson testified that, before the shooting, defendant accused her and Fleming of plotting to rob him. He forced her into the upstairs bathroom, ordered her into the

---

[4] Defendant does not dispute that he killed Fleming; he challenges only the sufficiency of the evidence establishing premeditation and deliberation.

bathtub, and told her to wait there until Fleming either arrived at or departed from the home.[5] When Johnson refused to get into the bathtub, defendant shot her. In his statement to police, defendant affirmed his belief that the victims were planning to rob him, reporting that he "put the pieces together" either the day before the shooting or when he heard someone downstairs in the living room on the night of the shooting. That evidence supports an inference that defendant developed a plan to shoot the victims some time before he killed Fleming, and he took steps to facilitate the killing by sequestering Johnson in the bathroom.

The circumstances of the killing provide additional support for the jury's verdict. Fleming was killed by a single gunshot wound to the back of the head. He was found near the front door, dressed in winter clothing, with a lighter and cigarette in his hands. Officers did not locate a firearm or other weapon on or near his person. From that evidence, a juror could reasonably conclude that defendant shot Fleming from behind as Fleming was leaving the home. See *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (acknowledging that premeditation and deliberation may be established by "the weapon used and the location of the wounds inflicted").

Finally, defendant's conduct after the shooting supported the jury's verdict. He fled to another state and disposed of the firearm used in the shooting. That conduct is indicative of consciousness of guilt. See, e.g., *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) ("Evidence of flight is admissible to support an inference of consciousness of guilt and the term 'flight' includes such actions as fleeing the scene of the crime.") (cleaned up); *Smith*, 351 Mich App at 25 (concluding that the defendant's act of hiding the gun used in the homicide supported an inference of consciousness of guilt).

Viewing the totality of the evidence in the light most favorable to the prosecution, a reasonable jury could conclude that defendant acted with premeditation and deliberation when he killed Fleming. The evidence was therefore sufficient to sustain his first-degree murder conviction.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Mariam Saad Bazzi
/s/ Andrew J. Lievense

---

[5] At the time of her testimony, Johnson could not recall whether defendant told her to remain in the bathroom "until [Fleming] leaves or until [Fleming] comes."